**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

    **v.**                    **CRIMINAL NO. 2:07CR19
                               (Judge Keeley)**

**JOHN C. SHARP,**

          **Defendant.**

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

On February 13, 2009, the defendant, John C. Sharp ("Sharp"), filed timely posttrial motions in this case seeking a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c), or in the alternative, a new trial pursuant to Fed.R.Crim.P. 33. (dkt. no. 172). On July 2, 2009, the Court held an evidentiary hearing to address Sharp's claims of prosecutorial misconduct and ineffective assistance of counsel. For the reasons stated on the record at that hearing, and for the reasons that follow, the Court **DENIES** Sharp's posttrial motions (dkt. no. 173).

## I. Facts and Procedural History

On July 20, 2007, a grand jury indicted Sharp on the following: 1) ten (10) counts of defrauding health care benefits programs, namely Medicare, Medicaid and WVWC, by billing for prolonged services that were not rendered, in violations of 18 U.S.C. § 1347; 2) ten (10) counts of defrauding Medicare and Medicaid by upcoding the level of visit services actually rendered,

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

in violation of 18 U.S.C. § 1347; and 3) ten (10) counts of defrauding Medicare and Medicaid by submitting claims for visit services which never occurred, in violation of 18 U.S.C. § 1347.[1]

During the trial, which lasted from May 27, 2008 through June 12, 2008, the government called a number of witnesses, including many of Sharp's former employees, as well as two expert witnesses. At the close of the government's case-in-chief, Sharp orally moved for a judgment of acquittal, which the Court denied (dkt. no. 121). Sharp then presented witnesses, including expert testimony. At the conclusion of the trial, a jury convicted Sharp on all counts.

Sharp now moves this Court for a new trial pursuant to Fed.R.Crim.P. 29(c), or a judgment of acquittal pursuant to Fed.R.Crim.P. 33 (dkt. no. 172).

## II.  Statement of the Law

Rule 29(c) of the Federal Rules of Criminal Procedure provides that, on a defendant's motion, a court may set aside a jury verdict and enter a judgment of acquittal.

When a defendant moves for a judgment of acquittal, the Court must determine whether upon the evidence, giving

---

[1]  On May 20, 2008, at the final pre-trial conference, the Court granted the government's motion to dismiss Count 17 (dkt. no. 104).

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

full play to the right of the jury to determine
credibility, weigh the evidence, and draw justifiable
inferences of fact, a reasonable mind might fairly
conclude guilt beyond a reasonable doubt.

U.S. v. Gallagher, 856 F. Supp. 295, 297 (E.D. Va. 1994) (quoting

U.S. v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (internal

quotations omitted). When a court is considering a motion pursuant

to Rule 29(c), it reviews the evidence in the light most favorable

to the United States; thus, if any rational trier of fact could

have found the essential elements of the crime beyond a reasonable

doubt, the court must sustain the conviction. U.S. v. Lowe, 65

F.3d 1137, 1142 (4th Cir. 1995). "Credibility determinations are

within the sole province of the jury and are not susceptible to

judicial review." Id.

A court may grant a motion for a new trial under Federal Rule

of Criminal Procedure 33 "if the interest of justice so requires."

"[A] court should exercise its discretion to grant a new trial

sparingly," and should only do so "when the evidence weighs heavily

against the verdict." U.S. v. Perry, 335 F.3d 316, 320 (4th Cir.

2003) (quoting U.S. v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997)

(internal quotations omitted). Unlike a motion for a judgment of

acquittal, however, the Court is not constrained to view the

evidence in the light most favorable to the government and may

evaluate the credibility of the witnesses. <u>U.S. v. Arrington</u>, 757 F.2d 1484, 1485 (4th Cir. 1985). Thus, a new trial is appropriate "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment . . . ." <u>Id.</u>

### III. Analysis

**A.  Ineffective Assistance of Counsel**

The Court took up Sharp's allegation of ineffective assistance of counsel during the evidentiary hearing on July 2, 2009, when it heard testimony from witnesses presented by both Sharp and the government, including Sharp's former trial counsel and Sharp himself. For the reasons stated on the record at the hearing, the Court found that Sharp knew he had a right to testify at trial, and further found that his actions at trial and immediately afterwards established a sufficient basis from which to infer that he had knowingly waived his right to testify. <u>See</u> <u>United States v. McMeans</u>, 927 F.2d 162, 163 (4th Cir. 1991). Based on the totality of the evidence, the Court further found that there was no agreement between Sharp's trial counsel and the government to deprive Sharp of his right to testify, or that, under the <u>Strickland</u> standard, Sharp's trial attorneys had been ineffective

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

in their representation.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Accordingly, the Court denied Sharp's motion.

## B.  Statute of Limitation on Certain Counts

Sharp contends that Counts 1, 2, 9, 10, 11, 16 and 20 of the Superseding Indictment were time barred by the five (5) year statute of limitations contained in 18 U.S.C. § 3282(a) because various changes in the Superseding Indictment "constitute significant variances and alter the statute of limitations." The government, however, argues that the Superseding Indictment contains only minor modifications to the original Indictment, none of which have altered the charges against Sharp.

The bringing of an indictment tolls the statute of limitations as to the charges contained in the indictment and puts the defendant on timely notice that he will be called to account for the charged activities, and that he should prepare his defense. United States v. Grady, 544 F.2d 598, 601 (2nd Cir. 1976).  Because the statute of limitations is tolled following the return of the original indictment, as long as a Superseding indictment does not broaden or substantially amend the original indictment the statute of limitations remains tolled and the Superseding Indictment

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

relates back to the filing of the original indictment.  Id. at 601-02.

"In determining whether a Superseding indictment broadens the charges in the original indictment, the touchstone is whether the original indictment provided notice of the charges such that the defendant can adequately prepare his or her defense."  United States v. Brown, 580 F. Supp. 2d 518 (W.D. Va. 2008).  Trivial or innocuous changes will not bar the Superseding indictment from relating back to the date of the original indictment.  United States v. Snowden, 770 F.2d 393, 398 (4th Cir. 1985)(citations omitted).

The grand jury returned the original Indictment in Sharp's case on July 20, 2007, and later returned a Superseding Indictment on December 18, 2007.  Counts 1, 2, 9, 10, 11, 16, and 20 involved medical reimbursement claims submitted within the five years prior to the original Indictment's date, but they were outside the five years prior to the date of the Superseding Indictment.[2]  Sharp argues that the Superseding Indictment included additions to

---

[2]  The following is a list of the counts and the respective date for which the claim was made: Count 1 – September 13, 2002; Count 2 – September 13, 2002; Count 9 – August 14, 2002; Count 10 – August 14, 2002; Count 11 – October 2, 2002; Count 16 – October 4, 2002; and Count 20 – September 25, 2002.

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

certain paragraphs, as well as the inclusion of two new paragraphs, ¶ 36 of the Introduction and ¶6 of Counts 1-10, which, either individually or together, constitute significant variances.

After reviewing the original Indictment as well as the Superseding Indictment, the Court concludes that both are based on the same set of facts, and that the changes and additions in the Superseding Indictment do not broaden the charges from those originally filed. Importantly, as the government has argued, the original Indictment charged Sharp individually and noted that he was the sole shareholder, officer and general manager of the corporation, Pocahontas Medical Clinics, Inc. ("PMC"). The changes in paragraph 2 of the Introduction merely state the date on which PMC was terminated and that, from that date forward, Sharp owned and operated PMC as a sole proprietorship. Similarly, the additions to paragraphs 9 and 14 of Counts 1-10, paragraphs 7 and 11 of Counts 11-20, and paragraphs 5 and 6 of Counts 21-28 indicate that Sharp, who was the sole proprietor of PMS, undertook the alleged actions instead of the corporation, PMC.

Those changes neither altered the facts laid out in the original Indictment nor broadened the charges, which remained against Sharp individually. Similarly, the additions to paragraph

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

5, the new paragraph 6 in Counts 1-10, and the alterations to paragraph 26 of the Introduction[3] are not consequential inasmuch as they do not broaden the charges in those sections of the original Indictment concerning the submission of fraudulent claims. As such, such changes and additions do not support a conclusion that the charges in the Superseding Indictment do not relate back to the date of the original Indictment. See Snowden, 770 F.2d at 398.

Finally, the remainder of the changes in the Superseding Indictment also are inconsequential. Paragraph 36 of the Introduction states that Sharp "was enrolled as a provider with Medicare, Medicaid and WVWC," which is an obvious deduction from the explicit charges in the original Indictment. The first paragraph of each section altered the reference to the Introduction as being one paragraph longer. Paragraph 7 of Counts 1-10 added the phrase "on that date of service," and paragraph 4 of Counts 11-20 merely removed the phrase "and caused claims to be submitted" while adding the phrase "and caused such claims to be submitted" at the end of the paragraph. Again, these changes in no way alter or

---

[3] Paragraph 26 in the Superseding Indictment deleted a sentence explaining the requirements for using CPT code 99211, and replaced it with a sentence noting that "CPT codes 99212 through 99215 were reserved for office visit services rendered by a licensed physician, nurse practitioner or physician assistant."

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

broaden the charges or the facts contained in the original
Indictment.

Thus, there is no basis to conclude that the Superseding
Indictment broadened the charges in the original Indictment such
that the charges in the Superseding Indictment are barred from
relating back to the date of the original Indictment. See Snowden,
770 F.2d at 398. Moreover, the Court agrees with the government
that, because Sharp did not raise the affirmative defense of the
statute of limitations at trial, he has waived that defense. See
United States v. Matzkin, 14 F.3d 1014, 1017-18 (4th Cir.
1994)(holding that the statute of limitations in 18 U.S.C. § 3282
is an affirmative defense that may be waived).

**C. Prosecutorial Misconduct**

Sharp alleges that the government engaged in prosecutorial
misconduct by (1) entering into an agreement with his trial counsel
that prevented him from testifying, (2) knowingly presenting false
testimony at trial, (3) making misleading statements during closing
argument, and (4) preventing witnesses from being interviewed by
Sharp's attorneys, both before and after the trial.

First, as the Court found at the evidentiary hearing on
July 2, 2009, there was no agreement between Sharp's trial counsel

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

and the government to deprive Sharp of the right to testify. During that hearing, in support of his allegations, Sharp relied on an affidavit from Lois Workman, a witness at trial, who asserted that, prior to trial, the government had told her that, during her testimony, she should only provide "yes" or "no" answers. In her affidavit, Workman also asserted that some of her trial testimony was "misleading and inaccurate."

A review of Workman's trial testimony, however, establishes that she did not answer only "yes" or "no" to questions asked of her, but provided detailed answers throughout her testimony. Moreover, as the government argued on July 2, 2009, the portions of Workman's testimony characterized in her affidavit as "not accurate" were not material to the charges against Sharp. Accordingly, the evidence adduced at trial and otherwise found in the record does not support Sharp's allegation that the government presented false testimony during his trial.

Second, Sharp argues that the Court erred in overruling his objections to some of the government's remarks in its closing argument. He also contends that it improperly refused either to strike those remarks or to grant him a surrebuttal argument because the government had raised issues in its rebuttal argument that were

10

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

neither the subject of Sharp's closing nor based on evidence presented during the trial. In this regard, Sharp specifically objects to the government's reference to "altered records."

The government denies that its rebuttal argument was improper. And, if its argument was improper, the government contends no reversible error occurred.

In order for a defendant to make out a claim of prosecutorial misconduct that amounts to reversible error, "'(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988)(citations omitted), overruled on other grounds by Bailey v. United States, 516 U.S. 137 (1995).

After reviewing the record in this case, the Court concludes that the government's remarks during closing arguments were not improper.[4]  Importantly, the complained-of reference to altered

---

[4]  The government made the following argument during its rebuttal:

| Mr. Bernard: | He [Sharp's counsel] also said [during his closing argument] that the defendant didn't hide records but in this case the defendant had sole and exclusive custody of the |

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

records by the government came in response to the closing argument

of Sharp's attorney referencing a memo by John Mitchell, Sharp's

office manager.   That memo, which was in evidence, discussed

changing incorrect information on account collection forms, and

contained the statement, "Change it or bring it to someone's

attention."   In his closing argument, Sharp's attorney had argued

that the memo did not say to bring wrong information to <u>Sharp's</u>

attention, but only that it should be brought to <u>someone's</u>

attention.   In addition, he had argued that fraudulent claims arose

due to John Mitchell's advice or innocent mistakes, and that

---

|  |  |
|---|---|
|  | records and when he did send the records into Workers Comp, what happened? |
| Mr. Hirschhorn: | Objection, Judge.  May we approach? |
| The Court: | No, I'm going to let him finish. Sit down. |
| Mr. Bernard: | What happened to those records? They were altered and that isn't a broken pipe.  That isn't maybe it rained outside.  A human altered those records before they were sent. A human did that and who had the motivation? Who stood to lose or gain by those audits? The defendant. |

<u>See</u> Trial Trans. P. 2678-79 (dkt. no. 166).

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

Sharp's honest and law-abiding nature demonstrated that he had not knowingly hidden anything.

Even if the government's statements in response to this argument could be considered improper, they did not unfairly prejudice Sharp's substantive rights; nor do they amount to reversible error. <u>United States v. Ollivierre</u>, 378 F.3d 412 (4th Cir. 2004). "Several factors are relevant to the determination of possible prejudice to the defendant: "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." <u>United States v. Chorman</u>, 910 F.2d 102, 113 (4th Cir. 1990).

As the government points out, the trial of this case lasted through three weeks of testimony and evidence. In addition to a number of witnesses, numerous records were admitted for the jury's consideration. In total, it cannot be said that the few lines uttered by government counsel in his rebuttal argument, which responded to Sharp's attorney's argument both during trial and in

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

his closing, and which, as the Court noted during trial, went directly to Sharp's state of mind, were not so prejudicial as to affect his substantive rights and deprive him of his right to a fair trial. For those reasons, the defendant's contention that the government's rebuttal argument was improper and amounted to reversible error is unavailing and cannot support Sharp's motions for a judgment of acquittal or for a new trial.

**D.   18 U.S.C. § 1347 and State-Run Workers' Compensation Programs**

Sharp next asserts that 18 U.S.C. § 1347 does not apply to worker's compensation programs that are wholly owned and operated by states, because (1) the statute does not specifically state that it applies to such programs, (2) the legislative history of the statute, although mentioning health insurance programs, does not specifically mention state-run worker's compensation programs, and (3) Congress could have explicitly stated that the statute applied to such programs, but did not do so. Sharp cites no case law nor any portion of the relevant legislative history in support of his argument. Instead, he "presumes" that Congress was "concerned" about the implications of the Tenth Amendment and "knew" that

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

states would have their own statutes to address worker's

compensation fraud. This argument is wholly without merit.[5]

As the government's response points out, state workers'

compensation programs clearly fall under the express provisions of

18 U.S.C. § 1347.  "Whoever knowingly and willfully executes, or

attempts to execute, a scheme or artifice – (1) to defraud **any**

healthcare benefit program . . . shall be fined under this title or

imprisoned not more than 10 years, or both."  18 U.S.C. § 1347

(emphasis added).  "Healthcare benefit program" is defined as

> **[A]ny** public or private plan or contract,
> affecting commerce, under which any medical
> benefit, item, or service is provided to any
> individual, and includes any individual or
> entity who is providing a medical benefit,
> item, or service for which payment may be made
> under the plan or contract.

18 U.S.C. § 24(b) (emphasis added).

---

[5]  At the end of his argument, Sharp summarily asserts that the admission of evidence during trial related to his civil dispute with West Virginia Workers' Compensation, the ultimate resolution of which was irrelevant and unduly prejudicial. To the extent Sharp raises this issue as a ground for his posttrial motion, the Court finds that such evidence, to the limited extent it arose during the trial, was relevant to the claims in this case and that its probative value was not substantially outweighed by any unfair prejudice. <u>See</u> Fed. R. Evid. 401, 402 and 403.  Accordingly, the Court rejects this basis for Sharp's motion, as well.

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

The WVWC is a public plan or contract under which medical benefits, items and services are provided to individuals. Moreover, as the government established at trial through the testimony of Jeannie Cress, WVWC affects commerce. See Trial Trans. P. 530 (dkt. no. 156). Accordingly, this Court concludes that 18 U.S.C. § 1347 is applicable to the charges of fraud against the WVWC program and denies Sharp's motion on this ground.

**E. Admission of Statistical Evidence**

Sharp argues that the Court erred in denying his pretrial motion to exclude evidence at trial presented by Dr. Klaus Miescke, a statistician, because (1) statistical evidence is never appropriate for trial, but only for sentencing, and (2) Dr. Miescke's extrapolation evidence was unduly prejudicial, irrelevant, misleading and confusing to the jury. Specifically, Sharp argues that extrapolation evidence created the impression that his medical practice was "riddled" with fraud, when only a small portion of his practice was ever reviewed for fraudulent activity. Sharp also argues that the inclusion of statistical evidence in the Superseding Indictment was unfairly prejudicial.

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

The government relies on <u>United States v. Pierce</u>, 409 F.3d 228 (4th Cir. 2005), to support its contention that extrapolation evidence may appropriately be used at trial.   In <u>Pierce</u>, the defendant was convicted of mail fraud and conspiracy to commit mail fraud in connection with a bingo operation.   While the holding in <u>Pierce</u> is distinguishable from this case in that it dealt with sentencing guideline calculations, the Fourth Circuit nevertheless upheld testimony from the case agent during trial concerning his calculations about the monthly average of defendant's purchases, and from that, his extrapolation of the total loss figure over the duration of the conspiracy.   409 F.3d at 234. The government further argues that the testimony of Dr. Miescke and the statistical evidence he presented meets the requirements of Federal Rule of Evidence 403 because the probative value of the statistical evidence outweighed any unfairly prejudicial impact.

After weighing the parties' arguments, the Court has no trouble concluding that Dr. Miescke's statistical testimony was properly admitted, <u>see</u> <u>Pierce</u>, 409 F.3d at 234, and survives the defendant's challenge under Federal Rule of Evidence 403 because its probative value substantially outweighed any unfair prejudice to the defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

**F.  Expert Testimony from a Physician in Health Care Fraud Cases**

Sharp next contends that the government was required to present expert testimony from a physician in order to meet its burden of proof in this health care fraud prosecution.  In support of this argument, he cites a number of cases in which the government proffered physician expert testimony, including United States v. Wexler, 522 F.3d 194 (2nd Cir. 2008); United States v. Moon, 513 F.3d 527 (6th Cir. 2008); United States v. Boesen, 541 F.3d 838 (8th Cir. 2008); United States v. Smith, 296 Fed. Appx. 770 (11th Cir. 2008)(unpublished); United States v. Bek, 493 F.3d 790 (7th Cir. 2007); and United States v. Mermelstein, 487 F. Supp. 2d 242 (E.D.N.Y. 2007).  Each of these cases, however, merely reflects a strategic decision by the government to rely on the testimony of physicians as part of its case-in-chief. Sharp offers no authority supporting his argument that non-physician experts "are not qualified to render opinions on medical decision-making contained in the various CPT manuals and CPT guidelines."

As it did prior to trial, the government argues again that its case against Sharp was about fraudulent coding and billing, not medical necessity or medical decision-making.  Thus, it proffered the expert opinion of Dr. Betty Stump, a certified professional

18

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

coder[6] qualified to evaluate the CPT Manual requirements and the justification for a particular code.

The government points out that, during her trial testimony, Stump discussed why an evaluation of the medical decision making component in coding is not clinical: "I don't question what the medical plan was; I simply evaluate it to determine where it falls in the scope of severity for assigning a code."  As such, her evaluation was an objective one that, based on Sharp's clinical notes, determined whether the medical decision-making component was coded and billed appropriately. It was not an exercise of clinical judgment.

The issues in this case did not involve questions of medical necessity, but rather alleged that Dr. Sharp had submitted claims for payment for services he had never rendered, or had sought reimbursement for higher levels of service than he had actually provided. In similar health care fraud cases, coding experts have routinely testified about whether services a provider billed were

---

[6] To the extent that Sharp's argument includes a challenge to the testimony of Dr. Betty Stump, an expert witness for the government who testified that the 1995 Guidelines were more advantageous to Sharp, the Court stated its reasons on the record at the final pretrial conference when it denied Sharp's motion in limine in this regard. Again, it finds that Dr. Stump was qualified to offer such opinions and, therefore, denies his motion for a judgment of acquittal or a new trial on this ground.

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

appropriate. See eq., United States v. Janati, 374 F.3d 263 (4th Cir. 2004) (ruling on an interloctury appeal). Furthermore, as the government points out, all the cases Sharp cites to support his argument that the government must present physician expert testimony involved disputed questions of "medical necessity". By their nature, these are clinical cases which, unlike the instant case, do require the testimony of an expert health care provider.

Because this case did not raise issues of medical necessity or any other clinical issue requiring a physician's testimony, and because the use of a coding expert was appropriate, see Janati, 374 F.3d at 267, the Court rejects Sharp's contention that the government was required to provide expert physician testimony to prove health care fraud under 18 U.S.C. § 1347.

## G. Sufficiency of the Evidence

Sharp contends that the jury's verdicts of guilty as to all the counts of the Superseding Indictment were based on insufficient evidence, and that the evidence produced at trial weighs so heavily against the verdicts that it was unjust to enter judgment against him. Specifically, he asserts that, although the charges against him alleged he had incorrectly used the extended office visit code 99354 to bill for services not rendered (Counts 1-10), that he had

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

upcoded or given instruction to upcode (Counts 11-20), and that he
had billed for patient office visit services not rendered (Counts
21-30), no witness testified he had committed any such acts.  In
fact, Sharp contends that the government's case rested on "what it
claims as lack of documentation," which alone is insufficient to
convict under 18 U.S.C. § 1347. To support this argument, Sharp
recounts evidence and testimony presented at trial, and relies on
the proffer from an attorney, James Fox, whose testimony the Court
excluded. He argues that this evidence establishes his innocence,
and that, at trial, his expert, Dr. Sophocles, refuted the
government's coding expert, Dr. Betty Stump.

A defendant who challenges a jury verdict based on the
sufficiency of the evidence bears a heavy burden. See Jackson v.
Virginia, 443 U.S. 307, 319 (1979).  "If there is substantial
evidence to support the verdict, after viewing all of the evidence
and the inferences therefrom in the light most favorable to the
Government, then we must affirm." U.S. v. Murphy, 35 F.3d 143, 148
(4th Cir. 1994) (citing Glasser v. U.S., 315 U.S. 60, 80 (1942)).
Substantial evidence exists whenever a reasonable finder of fact
could accept the evidence admitted as adequate and sufficient to
support a conclusion of a defendant's guilt beyond a reasonable

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

doubt.  <u>U.S. v. Burgos</u>, 94 F.3d 849, 862 (4th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1151 (1997).

Here, substantial evidence supported the jury's verdict.  At trial, the Government submitted voluminous documents, as well as testimony regarding each element of each count of conviction.  Both parties presented expert testimony that disputed the other side's methods and opinions.  In addition, through careful cross-examination and vigorous closing argument, Sharp's trial counsel attacked the credibility of the government's witnesses, including Stump, the government's coding expert.  After receiving all the evidence and hearing the arguments of the attorneys, the jury determined what weight, if any, to give to the evidence. After doing so, it convicted Sharp on all counts charged. Based on its own review of the record in this case, the Court finds that the government introduced substantial evidence at trial to support the jury's verdicts of guilt beyond a reasonable doubt, and denies Sharp's motion for a new trial on this ground. Moreover, even though Sharp alleges that his expert testimony wholly discredited the government's expert, the Court finds that the jury's verdict is not against the weight of the evidence.  <u>See</u> <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 433 (1996)("[A district judge

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

has] discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence.")(quoting Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525, 540 (1958)).

**H.  Jury Instruction on Defendant's Theory of the Case**

Sharp next attacks the jury charge. He asserts the Court erred by refusing to include as part of its instructions to the jury a statement he offered on his theory of the case for "Confusing and Ambiguous CPT Guidelines" (dkt. no. 126). As he argued when he submitted his revised instruction (dkt. no. 128) at the end of the case, Sharp now asserts that "at least upon proper request, a defendant is entitled to an instruction submitting to the jury any theory of defense for which there is a foundation in the evidence." United States v. Hicks, 748 F.2d 854, 857 (4th Cir. 1984). Sharp also posits that his theory of the case instruction should have been given because it was modeled on one approved in United States v. Migliaccio, 34 F.3d 1517 (10th Cir. 1994).

The instruction that Sharp contends the Court should have included in its charge, "Confusing and Ambiguous CPT Guidelines," stated in its entirety:

> There has been testimony that the CPT guidelines are confusing and ambiguous. Witnesses have testified that both clinicians and certified coders disagree as to the

23

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

> correct interpretation or application of the
> CPT codes at issue. The Defendant contends
> that because the CPT Guidelines governing
> coding and billing are ambiguous and
> confusing, his interpretation of the
> guidelines was reasonable. A reasonable doubt
> may arise when witnesses disagree on the
> proper interpretation and application of the
> CPT coding and billing guidelines because
> "[i]t is not the purpose of the law to
> penalize frank differences of opinion for
> innocent errors made despite the exercise of
> reasonable care."
>
> You may find ambiguities exist in the CPT
> guidelines as to the requirements for the
> coding and billing at issue here. If you find
> that such ambiguities exist, then to prove
> that the Defendant knew his billing practices
> were unlawful, the Government must prove
> beyond a reasonable doubt that there is no
> reasonable interpretation of the coding for
> the medical services rendered which would make
> the CPT codes the Defendant submitted
> factually correct.

Dkt. No. 126, p. 6 (citations omitted).

The government argues that this proposed instruction was
better suited for closing argument, and was, therefore, not
appropriate for inclusion in the charge. See United States v.
Fowler, 932 F.2d 306, 316 (4th Cir. 1991). Although it concedes
that the Court was required to instruct the jury on the law
pertaining to the defendant's theory of the case, the government
asserts that the Fourth Circuit does not require the trial court to

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

summarize the defendant's evidence in its instructions. Moreover,
whenever the law on which the defendant relies is adequately
explained in a proper burden of proof instruction in the charge, it
is not error for the court to reject an argumentative theory of the
case instruction. <u>Id.</u> The government further contends that the
<u>Migliaccio</u> case is not analogous to Sharp's case, and Sharp's
alleged confusion about coding was not a valid basis for a legal
defense. <u>See United States v. Janati</u>, 237 Fed. Appx. 843 (4th Cir.
2007)(unpublished).

At the final charge conference conducted on June 9, 2008,
following an extensive discussion the Court ruled that the
defendant's instruction was argumentative and also attempted to
define reasonable doubt for the jury in terms deemed improper under
Fourth Circuit precedent. <u>See United States v. Najjar</u>, 300 F.3d
466, 486 (4 th Cir. 2002)(affirming that it is improper to define
reasonable doubt unless the jury so requests). Accordingly,
because the defendant's proposed instruction was improper and the
Court's own instruction on good faith properly stated the law on
which Sharp rested his defense, covering the issues of honest
mistake and error of judgment in management, the Court declined to

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

include Sharp's proposed theory of the case instruction in its charge. <u>Fowler</u>, 932 F.2d at 316.

The government is correct that Sharp's reliance on <u>Migliaccio</u> is misplaced. In that case, the defendant was charged with defrauding CHAMPUS, a government health care benefit program that requires the defendant to report all procedures performed, whether they were covered or not. 34 F.3d at 1523. In this case, no such requirement applied.

Moreover, while Sharp's theory of defense, premised on alleged confusion, might raise a factual defense to a health care fraud charge, it is not a legal defense. <u>United States v. Janati</u>, 237 Fed Appx. 843 at 846-47. Pursuant to the holding in <u>Janati</u>, this Court determined that argument about Sharp's confusion attempted to elevate a factual issue dealing with his state of mind to a legal argument for which there was no support. 18 U.S.C. § 1347 is not overly vague, and Sharp's contention that the CPT codes and guidelines were ambiguous and confusing is not supported by the record. He therefore was not entitled to the theory of the case instruction he submitted.

## I. Trial Rulings

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

Sharp next contends that the Court erred in a number of its evidentiary rulings during the trial.

**1. "Search Warrant"**

First, Sharp argues that allowing the government to elicit testimony about a "search warrant" the government obtained indicated to the jury that he had done something wrong. Moreover, he contends that the reference to a "search warrant" had minimal probative value but its overwhelming prejudice "affected" his conviction, despite the Court's curative instruction.

In response, the government notes that its purpose was not to offer evidence about how a search warrant is applied for or approved, but rather to put into proper context how the investigating officer obtained the records from Sharp's office. The government argues that giving the jury knowledge that some records were recovered pursuant to a search warrant was necessary to set up the contrast between records seized pursuant to the search warrant and those voluntarily produced by Sharp. That contrast was relevant and not unduly prejudicial because, as the United States contended throughout the trial, the documents produced by Sharp had been altered. Finally, Sharp's contention that the mere mention of a "search warrant" implied to the jury

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,**
**OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

that he had "done something wrong" and created error is unavailing. As the government recognizes, upholding such an argument would make all criminal prosecutions involving an "indictment" and "investigation" impossible to prosecute.

Sharp's bald allegation that the mere mention of a "search warrant" created error in his case therefore is baseless. The government limited its inquiry on the issue, focusing on providing the jury with a complete story of the case's investigation, so as to put in proper context the production of certain documents obtained from the search and those produced by Sharp. See United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994). Accordingly, Sharp's motion on this ground is without merit.

**2.    Limitation of Defense Witness Testimony and**
**Exclusion of State of Mind Evidence**

Sharp also argues that the Court erred when it denied the admission of the testimony of James Fox, an attorney, and refused to admit Defense Exhibits 43-1a through 43-5a, 52 and 53. Sharp contends that this evidence, which related to an audit and lawsuit involving the WVWC, went to his state of mind and established his good faith belief that he could "exchange" certain billing codes for CPT code 99354 from 2000 through 2005, thereby helping to prove his lack of the requisite criminal intent to defraud Medicare,

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

Medicaid and WVWCC. Importantly, Sharp emphasizes that this evidence was relevant because it would have allowed the jury to infer his requisite state of mind from his conduct. <u>United States v. Van Metre</u>, 150 F.3d 339 (4th Cir. 1998).

In and of itself, this evidence could not have given rise to a reasonable inference as to Sharp's state of mind, because the exhibits Sharp identifies dealt with a prior WVWC audit and had no connection to the issues in this case. As the Court recognized on the record during an earlier hearing on this matter, Sharp had to connect those unrelated documents to the charges in his criminal case before the jury could properly infer from them his state of mind. Although Sharp wanted to use Fox's testimony to create that link, Fox could not properly have testified about what Sharp thought about the audit documents or Sharp's "beliefs" in regard to "exchanging" billing codes. <u>See</u> Fed. R. Evid. 801, 802, and 803.

Moreover, Sharp's reliance on <u>Van Metre</u> is misplaced. Although that case does support the principle that a defendant's state of mind can be inferred from his conduct, its holding dealt with the admissibility of evidence under Federal Rule of Evidence 404(b), regarding a defendant's prior acts. Here, Sharp attempted to admit evidence of a prior audit by a state agency.

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

For all of these reasons, as well as the reasons stated on the record during the trial, the Court did not err in its ruling when it excluded Fox's testimony.

**3.    Exclusion and Limitation of Defense Witnesses' Testimony**

Finally, Sharp alleges that the Court erred in excluding testimony from his expert, Dr. Sophocles, regarding certain health care benefit programs that, on or after January 1, 2008, allowed reimbursement for some telephone contact codes based on the CPT Manual codes. Sharp contends that, although he was permitted to cross-examine Ms. Clendenen on this issue, the Court excluded all subsequent inquiry on this issue of other witnesses which would have been relevant to establish (1) that the drafters of the CPT codes acknowledged the need for specific codes addressing the billing of telephone calls, and (2) that there was inherent confusion in the old codes based on the simple fact that new codes were required to address the issue.

As the government points out, however, the crimes charged against Sharp predated January 1, 2008, and none charged in the Superseding Indictment alleged fraud with respect to telephone codes found in the CPT Manual.  Thus, the provisions in the January 1, 2008 CPT Manual were not relevant to the issues in

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

dispute in Sharp's case.   Moreover, Dr. Sophocles ultimately
admitted that conduct such as Sharp's intentional billing of
telephone calls as office visits, because he knew or suspected that
the insurer would not pay for a phone call, would have been
fraudulent in any event.

Given that all the charges against Sharp related to events
prior to the effective date of the January 1, 2008 change in the
codes, the testimony Sharp sought to elicit from Dr. Sophocles
regarding the January 1, 2008 codes was irrelevant. The Court
therefore rejects any argument that it improperly excluded such
testimony under Federal Rules of Evidence 401 and 402.

### IV.  Conclusion

For the reasons stated on the record during Sharp's trial, and
at his subsequent evidentiary hearing, and as discussed in this
Order, when viewed in a light most favorable to the government
under Fed.R.Crim.P. 29(c), the totality of the evidence establishes
that a reasonable mind would fairly conclude that Sharp is guilty
of the charged offenses beyond a reasonable doubt. See Gallagher,
856 F. Supp. at 297. Moreover, pursuant to Fed.R.Crim.P 33, more
than sufficient evidence was adduced at trial to support the jury's
verdicts of guilty against Sharp on all of the counts in the

**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL,
OR IN THE ALTERNATIVE, MOTION FOR A JUDGMENT OF ACQUITTAL**

Superseding Indictment and precludes a finding that it would be unjust to enter judgment. <u>See</u> <u>Arrington</u>, 757 F.2d at 1485. Accordingly, the Court **DENIES** Sharp's motion to set aside the jury's verdicts and enter a judgment of acquittal and **DENIES** his motion for a new trial (dkt. no. 172). Furthermore, the Court **DENIES AS MOOT** the pending motions in limine (dkt nos. 55, 62, 65, 66, 77) and the government's motion for a protective order (dkt. no. 186).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: September 8, 2009.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE